United States District Court
Southern District of Texas

**ENTERED**
September 23, 2024
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| MEMDUH FATIH ATAMAN, | § |
| | § |
| *Plaintiff,* | § |
| VS. | §      CIVIL ACTION NO. 4:23-cv-2637 |
| | § |
| ROBERT L. DAUM, *et al.,* | § |
| | § |
| *Defendants.* | § |
| | § |

## ORDER

Pending before this Court is Robert Daum, Ur M. Jaddou, Ted H. Kim, and Alejandro Mayorkas' (collectively, "Defendants") Motion to Dismiss or, alternatively, Motion for Summary Judgment. (Doc. No. 8). Memduh Fatih Ataman ("Plaintiff") responded in opposition. (Doc. No. 9). Defendant replied, (Doc. No. 11), and filed a notice of supplemental authority, (Doc. No. 14). Plaintiff responded to the notice. (Doc. No. 15). Having considered the motion and the relevant pleadings, the Court **DENIES IN PART** and **GRANTS IN PART** Defendants' Motion to Dismiss and **GRANTS** their Motion for Summary Judgment. (Doc. No. 8).

### I.     Background

In July 2019, Plaintiff, a native and citizen of Turkey, sought asylum in the United States by filing an application with the United States Citizenship and Immigration Services ("USCIS"). Four years later, having not received an interview from USCIS, Plaintiff brought this suit under 5 U.S.C. §§ 555 and 701 of the Administrative Procedure Act ("APA") and 28 U.S.C. § 1361 ("Mandamus Act"), alleging Defendants have unreasonably delayed hearing and adjudicating Plaintiff's asylum application. Plaintiff seeks to compel Defendants to make a final determination on Plaintiff's asylum application "within two weeks." (Doc. No. 1 at 9).

The delay Plaintiff complains of arises from USCIS's last-in-first-out ("LIFO") policy. Per this policy, Defendants prioritize asylum applications in the following order: (1) applications where interviews need rescheduling; (2) applications pending 21 days or fewer; and (3) all others, starting with the new filings and working backwards. (Doc. No. 8-1 at 10). According to Defendants, LIFO discourages non-meritorious or fraudulent applications while USCIS works to reduce the backlog of asylum applications. (Doc. No. 8 at 4).

Defendants have moved to dismiss the case for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment. While this conjoined motion has exhibits attached, Defendants have cited to them in only one of their brief sections. This section, while not expressly labeled as such, will therefore be considered Defendants' alternative motion for summary judgment, and Defendants' exhibits will be considered only for that portion of the motion as relevant.

## II.   Legal Standards

### a.   Rule 12(b)(1) Motion to Dismiss

Federal courts are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005); *People's Nat'l Bank v. Off. Of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). Without jurisdiction conferred by statute or the Constitution, federal courts lack the power to adjudicate claims. *Exxon Mobil*, 545 U.S. at 552; *People's Nat'l Bank*, 362 F.3d at 336. A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Rule 12(b)(1). FED. R. CIV. P. 12(b)(1).

A federal court must consider a motion to dismiss pursuant to Rule 12(b)(1) before any other challenge because a court must have subject matter jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169 (5th Cir. 1994). The party

2

asserting jurisdiction bears the burden of proof that jurisdiction does in fact exist. *Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001). Where the motion to dismiss is based on the complaint alone, the court must decide whether the allegations in the complaint sufficiently state a basis for subject matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981).

    b. *Rule 12(b)(6) Motion to Dismiss*

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

3

c. *Rule 56(a) Motion for Summary Judgment*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

**III.   Analysis**

Here, Defendants move to dismiss under both Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a plausible claim for relief. Alternatively, they move for summary judgment under Rule 56. The Court first addresses Defendant's Rule 12(b)(1)

arguments because determining subject matter jurisdiction is necessary before any merits

determination.

    *a.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction*

        Plaintiff contends that this Court has jurisdiction under the Mandamus Act and the APA, in

conjunction with the statute giving the Court federal-question jurisdiction, 28 U.S.C. § 1331.

Through those statutes, Plaintiff seeks to enforce the following provisions of the Immigration and

Nationality Act:

> (ii) in the absence of exceptional circumstances, the initial interview or hearing on the
> asylum application shall commence not later than 45 days after the date an application is
> filed;
> (iii) in the absence of exceptional circumstances, final administrative adjudication of the
> asylum application, not including administrative appeal, shall be completed within 180
> days after the date an application is filed

8 U.S.C. § 1158(d)(5)(A)(ii)–(iii). He argues that by failing to meet either of these statutory

deadlines, USCIS has unreasonably delayed hearing and adjudicating his asylum application,

giving rise to his mandamus and APA claims. 28 U.S.C. § 1361 ("The district courts shall have

original jurisdiction of any action in the nature of mandamus to compel an officer or employee of

the United States or any agency thereof to perform a duty owed to the plaintiff."); 5 U.S.C. § 555(h)

("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it.");

§ 706(1) ("The reviewing court shall[] compel agency action unlawfully withheld or unreasonably

delayed.").

        i.    The Mandamus Act

        The mandamus remedy is "a drastic one, to be invoked only in extraordinary

circumstances." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). "Mandamus may only

issue when (1) the plaintiff has a clear right to relief, (2) the defendant a clear duty to act, and (3)

no other adequate remedy exists." *Wolcott v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011) (citations omitted).

"It is beyond serious dispute that mandamus pursuant to § 1361 is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private right of action." *Pesantez v. Johnson*, No. 15-CV-1155 (BMC), 2015 WL 547655, at *2 (E.D.N.Y. Sept. 17, 2015). That is because the plain text of § 1361 expressly cabins mandamus to compelling officers, employees, or agencies of the United States to "perform a duty *owed to the plaintiff*," not a generalized duty. 28 U.S.C. § 1361 (emphasis added); *Pesantez*, 2015 WL 547655, at *2. If the statute disclaims a private right of action, the agency does not owe a duty to the plaintiff specifically.

Moreover, § 1158(d) expressly disclaims a private right of action: "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." § 1158(d)(7). Thus, this Court has no jurisdiction over Plaintiff's mandamus claim, and Defendants' 12(b)(1) motion is granted as to that claim.

ii.     The APA

As to Plaintiff's APA claim, Defendants argue that this Court lacks subject matter jurisdiction to entertain a § 1158(d) claim to enforce those statutory deadlines since "judicial review of the Timeframe Provisions is barred by statute." (Doc. No. 8 at 9); *see* § 1158(d)(7). They also point to various cases that purportedly state the same rule. (Doc. No. 8 at 10) (citing *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 52 (S.D.N.Y. 2020); *De Oliveira v. Barr*, No. 19-cv-1508, 2020 WL 1941231, at *3 (E.D.N.Y. Mar. 19, 2020).

6

This argument appears to misstate Plaintiff's complaint. Count I of Plaintiff's cause of action specifically alleges "[v]iolation of Administrative Procedures [sic] Act 5[,] U.S.C. § 555 *et seq.* and § 701 *et seq.*" (Doc. No. 1 at 6). Plaintiff further writes that, "[u]nder the APA, *5 U.S.C. § 706(1)*, the Court is authorized to compel agency action which has been unreasonably delayed" and, thus, Plaintiff is seeking this Court to "compel[] Defendants to schedule and adjudicate his asylum application *pursuant to 5 U.S.C. § 706(1)*." (*Id.* at 7–8) (emphasis added). While Plaintiff cites § 1158(d) numerous times, those references are to support his claim that the agency owed a duty and failed to meet the second *TRAC* factor: whether Congress has provided a timetable for agency action. *See Telecomm. Research & Action Ctr. v. Fed Commc'n Comm'n* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984). As written in the complaint, which this Court must credit at this stage, Plaintiff's cause of action arises from §§ 555 and 706, not § 1158(d).[1]

Defendants' own cited authorities make clear that a district court, though without jurisdiction over § 1158(d) claims, still has jurisdiction over claims "alleg[ing] that Defendants have failed to comply with the much more general requirements set forth in the APA itself: that agency actions must be completed within a reasonable time and not be unreasonably delayed." *Xu*, 434 F. Supp. 3d at 52. Indeed, "§ 1158(d)(7) is not so broad as to strip Plaintiff of her right to challenge all delays in the adjudication of her asylum application, no matter how egregious." *Id.*; *see also De Oliveira*, 2020 WL 1941231, at *3 ("The Court retains jurisdiction despite the renunciation of a private right of action to enforce the statutory deadlines in § 1158(d)(7).").[2]

---

[1] Defendants seem to acknowledge as much, writing that Plaintiff only relies on the "passage of time" to support "his APA claim that Defendants have unreasonably delayed his asylum application *in violation of 5 U.S.C. § 706(1)*." (Doc. No. 8 at 10) (emphasis added).

[2] In their Notice of Supplemental Authority, Defendants point to *Ayana v. Jaddou*, a case in the Southern District of Texas. (Doc. No. 14). In it, the court determined that it "lacks jurisdiction to force the agency to adjudicate a delayed asylum application," citing to *Belle Co. v. U.S. Army Corps. Of Eng'rs*, 761 F.3d 383, 388 (5th Cir. 2014). No. H-23-2937, 2023 WL 8936700, at *3 (S.D. Tex. Dec. 27, 2023). However, by citing to *Belle Co.*, *Ayana* only addressed whether a court has jurisdiction "[i]f there is no final agency action." *Belle Co.*, 761 F.3d at 388. Thus, in determining

Therefore, this Court has jurisdiction over Plaintiff's APA claim, and Defendants' 12(b)(1) motion as to his APA claim is denied.

### b. *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

Defendants argue that, even if this Court has jurisdiction, Plaintiff has failed to allege sufficient facts to state an APA claim because his "assertion that the passage of time makes Defendants' actions unreasonable is merely a recitation of a cause of action." (Doc. No. 8 at 10). When read in the light most favorable to Plaintiff, however, his complaint and response—at least on their face—seem to walk through the *TRAC* factors. *See, e.g.,* (Doc. No. 9 at 17) (discussing "mental health and financial issues."). Since Defendants rely on their own exhibits to conduct a *TRAC* analysis, the Court need not address whether Plaintiff has satisfied the *Iqbal–Twombly* plausibility standard. Rather, to allow this Court to more thoroughly analyze those factors with all available evidence before it, Defendants' 12(b)(6) motion to dismiss is denied, and the Court will instead entertain Defendants' summary-judgment motion.

### c. *Rule 56(a) Motion for Summary Judgment*

In their alternative summary-judgment motion, Defendants argue that Plaintiff's asylum application has not been unreasonably delayed. (Doc. No. 8 at 14). Plaintiff disagrees. In evaluating claims of unreasonable delay[3] under § 706(1), courts often apply the factors stated in *TRAC.* 750 F.2d at 80; *see Aina v. Mayorkas*, No. H-24-1006, 2024 WL 3070185, at *3 (S.D. Tex. Jun. 20, 2024) (utilizing the *TRAC* factors). The Fifth Circuit, however, has not adopted this multi-

---

whether this Court has jurisdiction over a § 706 "unreasonable delay" claim, *Belle* and perhaps *Ayana* are not controlling.

[3] Plaintiff argues for the first time in his response that Defendants' failure to meet the 45-day deadline "falls under the 'unlawfully withheld' category, not the 'unreasonably delayed' category [of § 706(1)] because Congress has set a specific deadline for action on asylum interviews." (Doc. No. 9 at 13). This directly contradicts his complaint, which alleges that the agency action "has been unreasonably delayed," (Doc. No. 1 at 34), and contains no allegation of unlawful withholding. While Plaintiff could have amended his complaint per Rule 15, he chose not to. Thus, this Court will not consider his arguments that Defendants unlawfully withheld his relief sought.

8

factor test. *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 n.2 (5th Cir. May 12, 2023)

("[T]his circuit has never adopted that multi-factor test."). Nevertheless, the parties frame their

arguments on these terms, so this Court, without deciding whether the test governs, will use it to

aid the Court's analysis. These factors are:

    (1) the time agencies take to make decisions must be governed by a "rule of reason";
    (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, the statutory scheme may supply content for this rule of reason;
    (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
    (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
    (5) the court should also take into account the nature and extent of the interests prejudiced by delay;
    (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that action is 'unreasonably delayed.'

*TRAC*, 750 F.2d at 80.

    i.    Factor One: Rule of Reason

The first factor requires the time agencies take to make decisions to be governed by a rule

of reason. *TRAC*, 750 F.2d at 80. Defendants, while acknowledging the delay in adjudicating

asylum applications, argue that the implementation of its LIFO scheduling was a rule of reason.

Courts generally agree. *Kizilyildirim v. Daum*, No. 4:23-cv-03287, 2024 WL 1722277, at *6 (S.D.

Tex. Mar. 29, 2024) ("[T]he LIFO rule 'constitutes a rule of reason that satisfies the first *TRAC*

factor.'" (quoting *Xu*, 434 F. Supp. 3d at 53)), *report and recommendation adopted*, No. 4:23-cv-

03287, 2024 WL 1719924 (S.D. Tex. Apr. 22, 2024); *see also Lajin v. Radel*, No. 19-cv-52-MMA

(BLM), 2019 WL 3388363, at *3 (S.D. Cal. Jul. 26, 2019) (same); *Zhang v. Wolf*, No. 19-cv-5370

(DLI), 2020 WL 5878255, at *5 (E.D.N.Y. Sept. 30, 2020) (same). In response, Plaintiff does not

direct the Court to any contrary authority. Thus, this Court agrees with those courts and holds that

the first factor favors Defendants.

ii.     Factor Two: Statutory Deadline

While § 1158(d) does supply a timeline that Defendants must generally follow, it does not command USCIS to follow the timeline without exception. Instead, it offers an exception to the timeline in "exceptional circumstances." 8 U.S.C. § 1158(d)(5)(A)(ii)–(iii). Defendants argue that the current state of the asylum process constitutes exceptional circumstances and offer a plethora of evidence in support.

Defendants' motion and exhibits show that the current asylum process allows an applicant to apply for a renewable Employment Authorization Document ("EAD") 150 days after filing the asylum application if the asylum application has not been denied. (Doc. No. 8 at 2) (citing 8 C.F.R. § 208.7(a)(1)(ii)). That has incentivized individuals to file frivolous or fraudulent asylum claims, hoping to obtain EADs while their applications inch along the adjudication process. (Doc. No. 8-1 at 7). It also created a 400,000-application backlog. (*Id.*). To stem fraud and reduce backlog, USCIS instituted the LIFO system at issue today. (*Id.* at 8). LIFO theoretically has disincentivized fraudulent claims, since those applicants were now on notice that their applications would be processed quickly, potentially leading to their removal. (*Id.* at 8). LIFO's efficacy, however, was reduced when, in 2013, USCIS faced a surge of foreign nationals who (1) expressed fear of returning to their home countries or (2) were unaccompanied children. (Doc. No. 8 at 4) (citing 2020 USCIS Ombudsman Ann. Rep. 43, https://www.dhs.gov/sites/default/files/publications/ 20_0630_cisomb-2020-annual-report-to-congress.pdf). USCIS, therefore, was forced to divert resources away from processing affirmative asylum applications to conducting credible fear screenings and processing "unaccompanied alien children" cases. (*Id.*; Doc. No. 8-1 at 8–9). USCIS then reinstituted the first-in-first-out ("FIFO") system that Plaintiff seeks, but that led to an immediate rise in asylum applications, further deepening the backlog. (Doc. No. 8-1 at 12–13).

10

To combat the backlog, USCIS instituted the LIFO system, in addition to increasing the number of officer positions. (*Id.* at 10, 17–20). With these systems in place, the number of affirmative applications decreased, and the backlog's rate of growth also slowed. (*Id.* at 15–16). Defendants further argue that LIFO's success was in the face of "humanitarian crises" in Cuba and Venezuela that contributed to dramatic increase in asylum applications. (*Id.* at 16); *see also* (Doc. No. 8 at 5 n.3) (citing DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes, DHS).[4]

Plaintiff, on the other hand, fails to meaningfully dispute any of the above facts. Plaintiff argues that there is no exceptional circumstance because "the migrant 'surge' is not going away" nor is it a "short-term temporary expedient." (Doc. No. 9 at 16). The article Plaintiff relies on as support, however, seems to suggest the opposite. The opening paragraph of the NBC News article reads, "[t]he number of undocumented immigrant crossings at the southwest border for fiscal year 2022 topped 2.76 million, *breaking the previous annual record by more than 1 million.*" Julia Ainsley, Migrant Border Crossings in Fiscal Year 2022 Topped 2.76 Million, Breaking Previous Record, NBC News (Oct. 22, 2022, 10:36 AM) (emphasis added).[5] A record-breaking migrant surge, with USCIS's finite resources, seems like the kind of exceptional circumstance Congress envisioned when it created a safety valve in § 1158(d). Plaintiff has failed to create a genuine, material fact issue here. The second factor also favors Defendants.

---

[4] Available at https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new-border-enforcement-measures-and#:~:text=WASHINGTON%20%E2%80%93%20The%20Department%20of%20 Homeland.

[5] Available at https://www.nbcnews.com/politics/immigration/migrant-border-crossings-fiscal-year-2022-topped-276-million-breaking-rcna53517.

iii.     Factors Three and Five: Human Health, Welfare, and Interests at Stake

The third *TRAC* factor asks whether the relevant regulation and agency action relates to the economy or health and welfare, while the fifth factor counsels courts to "take into account the nature and extent of the interests prejudiced by the delay." *TRAC*, 750 F.2d at 80. Plaintiff is correct that asylum application processes deal with human health and welfare. Factor three, therefore, favors Plaintiff.

While the *nature* of the agency action may favor Plaintiff, however, the *extent* of the delay's effect on Plaintiff leads this Court to conclude that factor five favors Defendants. As mentioned above, the fifth factor counsels courts to "take into account the nature and extent of the interests prejudiced by the delay." *TRAC*, 750 F.2d at 80. Plaintiff directs the Court to his unsworn requests to expedite his asylum application, which lays out his grievances. In those requests, Plaintiff recounts the stress of uncertainty (especially with his mother in prison for illegal border crossing into the Netherlands), his employer frequently asking him about his status, and inability to find a different job even though his field "is highly in demand." (Doc. No. 1-3 at 1–3). Plaintiff also laments that he and his wife are "wholly reliant on USCIS for renewal of their [EADs]." (Doc. No. 1 at 2).

As Defendants point out, however, "this sort of prejudice is inherent in the asylum application process." *Xu*, 434 F. Supp. 3d at 54. Moreover, there are over 20,000 asylum applications currently pending with the Houston Asylum Office that are older than Plaintiff's application. (Doc. No. 8-2 at 6–7). Plaintiff never clarifies why he, before the 20,000 applicants before him suffering the same prejudice, should be allowed to cut the line.[6]

---

[6] While Plaintiff may argue that all 20,000 applications should be adjudicated by the statutory deadline, that is "the kind of broad programmatic attack" that is precluded in a § 706(1) claim. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

12

Further, Plaintiff and his wife both already have EADs, a status that allows them to obtain employment and lawfully reside within the country. The final decision he seeks from USCIS may actually deprive him of that status and force him back to Turkey from where he sought refuge. The relief he seeks has no guarantee of alleviating any of his grievances. Thus, the fifth factor weighs in favor of Defendants.

    iv. Factor Four: Prejudice to the Agency

This factor requires the Court to consider the "effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Defendants argue that granting Plaintiff's relief will prejudice older pending asylum applications, leading to no net gain for the system or the agency. Moreover, it will force the agency to reallocate its limited resources, which, Defendants argue, courts should not second-guess.

Plaintiff declares in response, "[t]he fourth factor, competing agency priorities, represents information that the government would be expected to provide in defense. It does not need to be pleaded." (Doc. No. 9 at 16). While Plaintiff did not object to the summary-judgment motion or argue that it was premature, the Court will not consider factor four so as not to prejudice Plaintiff. Consequently, it considers this factor to be neutral.

    v. Factor Six: Impropriety by the Agency

As demonstrated above, the record is full of Defendants' efforts to manage and reduce the backlog in light of a surge of migrants, including increasing hiring and the number of officer positions. (Doc. No. 8-1 at 10, 17–20). In response, Plaintiff fails to provide evidence that raises a genuine issue of material fact of agency impropriety. Rather, Plaintiff only states: "Plaintiff is not privy to the details of how USCIS allocates its funding or whether it does so in a generally

negligent manner." (Doc. No. 9 at 17). He still does not object to the timing of Defendants' motion. Thus, the sixth factor favors defendants.

In total, at least four out of the six factors favor Defendants. Plaintiff has failed to raise a genuine issue of material fact in support of his APA claim, nor did he provide the Court with any reason not to consider Defendants' summary-judgment motion.

## IV.   Conclusion

For the foregoing reasons, this Court **GRANTS IN PART** Defendants' Motion to Dismiss as to lack of jurisdiction over Plaintiff's mandamus claim and **GRANTS** their Motion for Summary Judgment as to Plaintiff's APA claim. (Doc. No. 8). A separate final judgment will be entered in accordance with Rule 58 of Federal Rules of Civil Procedure.

Signed on this the 23'd day of September 2024

Andrew S. Hanen
United States District Judge

14